Appellant. Mr. Becker and Ms. Hernandez for the appellants and Ms. Bates for the appellate. Good morning, Mr. Becker. Good morning, Judge Pillard, members of the panel. I just want to apologize that we had not ruled on the motion and that we are glad to give Ms. Hernandez seven minutes of time and Mr. Becker seven minutes. Of course, the government's time is adjusted accordingly. Thank you very much. Mr. Becker and Ms. Hernandez for the appellant. The debate about whether 2X1.1 applies in this case depends almost entirely on interpretation not of the guidelines but defining what is said in the commentary attached to the guidelines. The government's argument relies on a model which held that because, pretty much because the guideline 2B3.1 does not explicitly say that it covers Hobbs Act conspiracies, then you must look to 2X1.1 as the basis for sentencing for the conspiracy. But it takes the opposite approach when it comes to a defendant's assertion under 2X1.1 that he or she is entitled to the three-point reduction in sentence, as you can see from the argument they made in the Kennedy case in the Second Circuit that's appended to our own library. Analytically, the Second Circuit's analysis in a moment doesn't make a lot of sense. It says that the elimination of a guideline specifically identifying the Hobbs Act, 2E1.5, prior to 2X1.1 meant that the commission affected a major policy shift. In other words, 2E1.3 said this applies to the Hobbs Act. And all it said under that is that if you have a Hobbs Act offense, look to 2B3.1 for sentencing. And then 2B3.1, as far as the Second Circuit was concerned prior to Amato, included conspiracies under the Hobbs Act. But because the commission to streamline the guidelines removed 2E1.5, that somehow changed what 2B3.1 said. And then we are to look to 2X1.1, which covers intended conduct as well as actual conduct. The guidelines provision that was deleted in 1993 did not explicitly say that it applied to conspiracies under the Hobbs Act, though, right? That's correct, Judge Wood. It merely said, if it's a Hobbs Act offense, go to 2B3.1. And 2X1.1 was still in effect, or was in effect at that time, right? Essentially, it is the same as it was then. So how does the presence of that particular provision, even back then, if we were back in 1992, exclude the possibility that both guidelines provisions could apply? Well, the Second Circuit said in Skowronski that it applied because you look to the statute of conviction. And the statute of conviction, the Hobbs Act, includes in one subsection, A, the substantive offenses of robbery or extortion, and attempts and conspiracies to commit robbery and extortion. And so the Second Circuit even said, back then, you look to the text of the statute to determine whether the statute, the guideline expressly. But that's your argument, right? Yes. Is that you look to the text of the statute, because the statute covers conspiracy, then you go to 2B3.1, as distinct from 2X1.1. And I guess my question is, how does that help you? Because the district judge seems to have found that, in fact, these individuals possess the guns during the conspiracy. And if that's the case, then it's either way, it comes out the same. But, well, we would dispute the fact that they actually possess the guns, or that the guns were part of the conspiracy. But we have to find that she clearly erred in that finding, because she did find, with respect to at least Hopkins and Wallace, that they possessed the guns. And then, as I read it, under 1B1.3, that McKeever's responsible for that as well. Well, I guess I would argue that, for McKeever, the situation is somewhat different, because McKeever arrived at the storage facility with three other people, none of whom had guns. He knew they didn't have guns. He didn't know what transpired in that car, at least by Benny Dean's account at his trial. And there's nothing in the government's case that disputes that, that Hopkins came to the car where Benny Dean and McKeever were sitting and didn't say anything about guns. So McKeever has no knowledge, at that point, that the guns were in the other car. But under 1B1.3, what needs to be found is that it was reasonably foreseeable, and there had been a bunch of discussion previously about guns and who was going to bring them and if they were going to have them. And then that occurred. So it has to be reasonably foreseeable, and it appears to have been based, or at least arguably based on the prior discussions, and then it did occur. But it has to be, but 1B1.3, to the extent that it applies to conspiracies, basically codifies Pinkerton. So it has to be an act, an intended act of a co-conspirator that is And therefore, it cannot act in furtherance of the conspiracy. But the premise of my question was that the district judge had found that the other two, that Hopkins and Wallace, had possessed the guns. So that's not, the government supplying them is not part of the way she finds the facts in the case. She made that finding, and I think that there are two issues there. One is, I don't think that her sentence depends on that finding. She said that's an alternative reason, but the government's main argument certainly was that it applied because this was part of the conspiracy, regardless of whether the guns were there. And therefore, the gun bump applied, and she, I think, as her main finding, found that was the case. And then she said, but also, Hopkins and Wallace touched the guns. And A, I believe that there really was not any ever possession by them. In the, I guess, controlled substances statutes, some of them include, I think it's 841, includes both the substantive offense and conspiracy, right? That's correct. And how does the application of the guidelines there affect your argument? In fact, the commentary to 2X1.1 says that among the guidelines that expressly cover conspiracies, therefore not looking to 2X1.1, are all of the drug offense, 2D1.123, all of those. And in fact, all of those guidelines have attempt and conspiracy in the title of the guidelines. There is one guideline in that list that's different. It is 2H1.1, which is offenses against individual rights. And there is nothing in that guideline that says anything about conspiracy, not in the text, not in the title, not in the commentary. You have to look to the statutes of conviction that are included in the statutory references. One of them is 18 U.S. Code 241, for example, which is conspiracy against individual rights. One of them is the genocide statute, and the third is in the Fair Housing Penalties and the statutes specifically cover conspiracy. But there is nothing in the text of the guideline or anywhere in it that says that that guideline, 2H1.1, applies to conspiracies. But the commission specifically said it expressly covers conspiracy. And the thing to note about that... But doesn't it hurt you that the commission didn't make that express qualification for the Hobbs Act? I do not believe it does, Judge Wilkins, because in 1B1.2, note 2, it says the word includes means illustrative of. It is not an attempt to be exhaustive. So 2H1.1 is very much like 2B3.1. Nothing in the guideline refers to conspiracy, but the commission says that's expressly covering the conspiracy as well. And there are, in fact, 37 statutes in the statutory appendix, in the statutory reference page, that specifically cite 2H1.1. Many of them are statutes that have a substantive offense and a subsection that covers conspiracy. And so the commission felt it necessary in those cases, in the statutory cross-reference, to say, if you have an offense under this, you look at both the substantive offense and 2H1.1. Because there is a section in that substantive offense that deals with attempt to conspiracy. And they did not do that with 2B3.1, which they could have done. So the commission should not be presumed to have excluded 2B3.1 merely because it didn't specifically say something. I think everything in the structure of the guideline and its cross-references says that a statute that clearly covers both the substantive offense and the conspiracy offense should be viewed as falling outside the scope of 2H1.1. And at this point, if you have no further questions, I will relinquish. Thank you, Mr. Becker. May it please the Court. I'm Carmen Hernandez. I represented Mr. Wallace in the district court. To respond first to the court's question about what the district court found, the district court did find that the fact that two defendants handled the firearms that were handed to them by the agents meant that they had possessed the firearm during the conspiracy. There's a couple of arguments to that. One, the government's position below was that the conspiracy did not become a conspiracy until they entered the storage cubicle. The government's position was that no conspiracy had actually been agreed on until they reached the storage cubicle. So to that extent, I think the district court was, and I objected to that below. And the reason for that was my client, for example, is with the agents twice in the beginning, and then he doesn't meet with them again until that one day. And, in fact, there was a trial, a subsequent trial, and the evidence there, and I believe we brought this out at the Sensen hearing, is that there was no discussion of what they were going to do other than they showed up. My client, the two guys who were in the car were cousins. So my client is a cousin to Mr. Hopkins, who was there throughout all the meetings. With respect to 2B3.1, Your Honor, what's clear, the commentary in 2B3.1 says explicitly that this is. . . Actually, I don't know if this is one of the issues you were planning to address, but the sentencing manipulation question about whether. . . One of the questions I have is whether the defendants raised the arguments, each of them, where in the record they raised the argument that the government's proffering at least should have been considered as a factor in the sentencing. Was that something you were planning to address? I can address it. We. . . The judge was clearly aware of it. She held an evidentiary hearing at sentencing. I mean, that's when we got a lot of the information. So there's no question she understood what we were arguing. There is a state, and it's cited in our brief. In the sentencing memo that I filed, I list that as one of the mitigators. At page 14, ECF document 56, I state that I saw that. Did McKeever and Hopkins make the same objection? Mr. Hopkins was sentenced separately at a different hearing, so he wasn't present there. Mr. McKeever was present. Mr. McKeever and Mr. Wallace were sentenced together, and our arguments as the court accepted them, we didn't repeat ourselves. We try not to repeat ourselves. We're defense attorneys, so we repeat ourselves all the time. But it was clear that the court was accepting joint arguments. If one person made the argument, she accepted it. Well, Hopkins' counsel says that the first plea proceeding refers specifically to sentencing enhancement. Correct. And I'll be candid with the court. Part of the problem was that until this year when the court decided bigly, the notion of sentencing entrapment as a mitigator was prohibited by this court in a series of cases that the court had decided, and that was part of the reason it was not made more directly. And then I believe in 2015 the court decided bigly and sort of reversed the line of cases that had held that sentencing entrapment. But it is part of your argument here on appeal. Yes. Well, what I'm suggesting is that Hopkins' counsel appears to use the word sentencing enhancement. Specifically. Yes. I mean, you're apologizing for something, and I'm not sure why, because it looks like it's specifically raised. It was specifically raised by Hopkins. All right. It was specifically raised by Hopkins at a separate sentencing hearing. That's the only reason I'm... And there's no question that the court understood. Part of the problem is none of us realized the nature of this case. Since that time, I've handled a couple of more of these reverse stinks, and the fact is that ATF has prosecuted thousands of these cases across the country, and Hopkins makes those arguments here, which weren't properly made perhaps below. A follow-up question, Ms. Hernandez, is did the court fail to address that argument? Is that your position, that the court failed to address it? Yes. The court failed to address it. The court failed to address it explicitly. And did counsel, after sentencing, bring that to the court's attention? Did we make a specific objection after she imposed sentence? No. Although I don't believe that's the practice. After you've made arguments and the court imposes sentence, we do not in this district for the most part get up and say we take exception to 1, 2, 3, 4. The judges... Did the judge here give counsel an opportunity to do that? I don't believe so, Your Honor. It certainly wasn't invited. I'm not suggesting that if I had gotten up and said I take exception to X, Y, and Z, but the court didn't say are there any exceptions. I've been in other districts where judges say in the 11th Circuit, the district court judges will tell you take exception to a particular ruling right now. But especially Judge Rubell, it's understood that if you've written something or if she's aware of something, then she accepts that as we don't need to make another objection. Beyond the... 2B3.1 structurally under the guidelines starts out at a very high offense level. Compare that to the drug guideline which starts at 6 and then adds a whole bunch of enhancements. 2B3.1 starts at a very high offense level because it takes into account the threat of violence in a robbery. It takes into account all the harms that you would consider are involved in a robbery. And then it adds the firearm enhancement only when the firearm is actually used during the robbery. And that's the background commentary to the robbery guideline. Background commentary to 2B3.1 explicitly says possession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancements where these factors are present. And there's a whole series, and 1B1.3 also, the relevant conduct guideline, also refers to the difference in the robbery guideline. A lot of the guidelines talk about intended harm. Can you address a little bit more? I'm just not sure that I follow why the guidelines arguments could make a difference for your clients unless you can deal with the fact that the judge found that these individuals possessed the guns. And I did hear you respond to that when you first stood up and saying that the government changes its theory. Is that, in your view, a ground for us to find that the judge clearly erred? Yes. In finding that Hopkins and Wallace possessed the guns and that the conspiracy began before they entered the storage unit? Yes. So you're asking us to find that the judge's possession determination was a clear error? Yes, and I argued it to Judge Buvel, and she rejected it. And not only did the government stand up, the government's position was that the conspiracy was formed inside the cubicle because the defendants had been at different meetings. One attended two meetings, another one attended three different meetings. Right, and that's where they all come together. And that's the first time. And one of them, Benny Dean, who ends up going to trial and gets acquitted, shows up for the first time, first and only time, at that cubicle. There's no discussion inside the car about these are the firearms we're going to use for the... When the firearms are handled, there's no discussion about the robbery inside the car. So they're handled, obviously, because it's part of the sting, it's part of the ATF sting, and it's part of the ATF sting, and they're trying to set up a situation where they're in possession of a firearm. The defendants never brought firearms to the robbery. And so there's no discussion. They're handled, they're taken back, and they're not taken into this storage cubicle. So even though there's a lot of talk, and there's a lot of trash talk, and my client in particular, there's references to he's always drunk. When he enters the storage cubicle, he's got a cup, he's drinking something, and the government pours more liquor into his cup. It's, from a policy point of view, it's an awful setup, it's an awful sting. And to then enhance these gentlemen for a firearm when they didn't bring one, it's just not in the interest of justice. Also, another argument that was made is if you're going to enhance for a firearm, at least do it for a firearm that is for a dangerous weapon rather than a firearm, because the firearms that were shown were not operable. And that would reduce the offense level by two levels instead. It would have been a three-level enhancement instead of a five-level enhancement. The firearms were inoperable. They were never brought into the storage cubicle. Was that the inoperableness argument raised by defense counsel below? And that was in the sentencing memorandum? Yes. And it also was during the sentencing hearing. And I'm happy to fire on that. Did you argue that in your brief? I'm sorry? That argument in your brief? To us. I'm not 100% certain, Your Honor. I'm happy to file a letter. I'll look at it when I sit down, and I'll let the court know. Thank you. Thank you. That's weird. May it please the Court, Lauren Bates on behalf of Appellee of the United States. I'd like to begin by talking about the guidelines application of Section 2X1.1. I think as the Court has recognized and Judge Pillar has pointed out, I don't know that this Court needs to reach the issue of whether 2X1.1 applies given the factual findings and rulings made by the District Court regarding the applicability of the gun enhancement. But it's the government's position that 2X1.1, as the District Court found, does apply. And that's because of the explicit reference in Guidelines Section 2X1.1c that directs that it applies where the guideline for the substantive offense, here the robbery guideline, Section 2B3.1, does not expressly cover attempts, solicitations, or conspiracies. And following up on that, the commentary, the notes, give some examples of guidelines that do expressly cover attempts, solicitations, or conspiracies. And 2B3.1 is not listed there. So looking at what the directive is in the guidelines, it is to look at whether the Guidelines Section covers attempts, solicitations, or conspiracies, not whether the statute of the offense covers attempts, solicitations, or conspiracies. And that's the argument that the majority of circuits who have considered this issue have followed, that this is a question of whether a Guidelines Section, here 2B3.1, expressly covers conspiracies, not a question of whether the Hobbs Act. Let me ask you a question. So if we agree with that argument about the effect of 2X1.1c, is it the case that every guideline that the manual references as being one that expressly covers a conspiracy, that every guideline says that? So I think that this question picks up on one of the arguments that Appellant's Counsel made regarding 2H1.1, and I agree that that is probably the most difficult guideline to reconcile that's listed in that list. But I would say that you would both look at 2H1.1 and the fact that the commission, in considering what that guideline was intended to cover, believed by listing it in that section either correctly or mistakenly that it expressly covered. But regardless, you don't have either one here for the robbery guideline, 2B3.1. You don't have any words that you can point to in the robbery guideline that expressly indicate that it covers attempts, conspiracies, or solicitations, and it is also not listed as a Guidelines Section that does expressly cover attempts, conspiracies, or solicitations. So I'm not sure that this is true. But we do have the guideline, I guess it's the appendix, statutory appendix, and for that statute, for whatever it is, 1951, it doesn't list 2X1.1 as applying to it, right? So that's the commission giving some guidance as to what guidelines apply to that statute. So I think that that's the commission giving guidance as to the substantive offense guideline that applies to that statute. I don't know that that answers, for example, there's no separate, stepping away from conspiracy, which is what we have, there is no separate statute that charges an attempt in federal law. And so if you look at each list in the statutory appendix, you will not find that for every statute that could also criminalize an attempt, that there is a list of 2X1.1 also applying, but it has to. That is the only way that you can deal with and address attempts under the guidelines for certain crimes. So I don't know that the, whether or not 2X1.1 is explicitly listed in the statutory appendix, is really the dispositive inquiry here. Because, again, being faithful to the directions in 2X1.1C and the text of 2B3.1, it simply does not expressly cover conspiracies. Why shouldn't some sort of rule of lenity type consideration apply here where it's not clear? Well, I don't know that this is really a situation where the rule of lenity would apply. And I'm not sure in all cases, as the panelists have pointed out, that application of 2X1.1 is really not in the interest of the defendants, given that it also provides for reductions where the offense was not near completion at the time. So I'm not sure that really the rule of lenity could be applied to this context where the guideline is just one that accounts for the circumstances of an attempt, a conspiracy or solicitation, and the fact that sometimes those crimes are not near to completion and therefore you get a reduction. And because of the nature of those crimes, because of the fact that there are multiple participants jointly liable for the crime, there needs to be taken into account some direction to the district courts on how to account for that conduct in applying the offense enhancements. And that's what the court used here of how to understand when two people are handling the guns but one is not, how to take that conduct into account given that this was a conspiracy, where there was an agreement amongst all of the appellants to participate in this offense. And as the district court found, the offense included the possession of firearms. Let me ask you about that, Ms. Bates, if you could respond to defense counsel's argument that she clearly erred in finding gun possession in this case because, as they contend, the government had asserted that this was a conspiracy that only was formed in the storage unit. So both in that clear exactly where appellants are now pointing to as to the government's assertions, to the extent that it's based on the facts to which the defendants agreed to at the time of their pleas, I don't know that that is not an assertion on the basis of the government. To the extent the defendants in their pleas agreed to participation on that final day in April 4th, the government was still in the course of the sentencing hearing and in presenting its evidence as to the applicable enhancements. The government presented evidence of all of these meetings, the sequence of meetings, and asked the court to consider all of that in determining whether the relevant enhancements applied. And the district court, I think regardless of the government's positions, whether they were articulated in the manner appellants suggest, regardless of that, the district court made a finding. The district court explicitly found, and this is on page 135, I'm sorry, on page 100 of the October 9th, 2013 transcript, which is the evidentiary hearing and then the sentencing of Wallace and McKeever, that the conspiracy began as to Hopkins and Wallace early in March and as to McKeever no later than March 19th. That is all well before the April 4th meeting where the guns were handled and possessed and then the subsequent discussion of the use of those firearms occurred inside the storage unit. And you say in your brief that if defendants had raised the sensing entrapment argument, then, quote, discussion of the point would have been in order, close quote. Do you think that they did raise this? So I don't think that they asserted a sentencing entrapment argument as it related to the five-point gun enhancement in the manner that is necessary to require a district court to specifically under Bigley address that argument. This is, of course, pre-Bigley, and they did raise in their sentencing memoranda, and I think at least Hopkins' lawyer raised this again orally in the hearing, this smells of entrapment, come on, these guys were, you know, at least you have to take this into account, you know, they arrived without any guns, the government thrust them into their hands. I think the district court finds it looks surprised, and it seemed like they were asking for, you know, at least take this into account in sentencing in a discretionary fashion. I don't disagree that the parties asked the district court to take into account the entire circumstances of this offense and argued that that should be a mitigating factor. But that's not the same as raising sentencing entrapment as related to the five-point gun enhancement. They argued, you know, this whole offense was created by the police. They mentioned enhancement, so I'm not sure where you think it falls short. Are you arguing it wasn't articulated the way I, you, would have articulated it, having thought about it carefully? So one counsel said, so there's basically an argument to be made that there's a kind of sentencing enhancement that occurred by the undercover officers. Now, that's pretty straightforward to me, especially when you know the facts in this case. So, I mean. So what, why is that not enough? So as to, if I may, as to Hopkins or Wallace, who has pointed to the sentencing memorandum filed, that argument with those words is not there. It's an argument for general facts, supporting mitigation, and the district court considered that. The district court considered and stated on page 135 of the sentencing hearing as to Wallace and McKeever that she considered that the offense was, quote, created by the police. So that argument was considered by the district court. Well, then maybe an answer is we're not comprehending the district court's answer. I mean, if you're conceding that the district court, or arguing that the district court got it, and this was her explanation, then as an appellate judge, my response might be, I'm not sure I understand what that answer was, so we should send it back for clarity. Doesn't that make sense? Because what you're now arguing is correct. I don't understand it. If the district court understood sentencing enhancement was being raised and said what you said, then my response as an appellate judge is, I hear you, but I don't understand you, so I have an obligation to send it back. This is a criminal case. I recognize that. And I think my response would simply be that the district court understood, knew in great detail, what the facts were that led to the pleas in this case and the convictions in this case, and recognized that the offense was one that was created by the police and sentenced each appellant to the low end of the applicable guideline range. What didn't happen here, and what appellants are now claiming, is that they did not ask the district court to specifically vary below the guidelines because of the fact that the gun enhancement was applied, and under Bigley, if they had specifically asserted that, this court has found that the district court should have directly and expressly addressed that given the pre-Booker case law of this jurisdiction. And you don't assert that she directly and expressly addressed that, do you? So I think we assert that without using, because the issue was not teed up with the specificity that appellants are now asserting, she didn't address that with any great degree of specificity, but I would say that her general statement of a recognition that the offenses as a whole were created by the police would render a remand, even if there's a question as to whether or not a particular appellant raised this sentencing entrapment as to the five-point gun bump with the requisite specificity, would render a remand unnecessary here, given that she not only was considering whether the gun enhancement was created by the police, but she considered that this entire offense and the arguments that the entire offense was created by the police in imposing and crafting her sentence here. And we have great both respect for and empathy for the district courts in all the issues that they need to be addressing and taking into account in a sentencing like this, and it's very fast-moving, it's very complicated, but it is really curious when you look at the record that she says, quote, you know, I understand that this is created by the police. I clearly understand, and it's for that reason. And then it's sort of a cut or there's something dropped in the decision. She says it's for that reason, coupled with the fact that obviously you can't exercise very sensible judgment, but that's not an excuse for a crime, but I'm going to sentence consistent with the low end of the guideline. So she says it's for that reason, and then she doesn't say it's for that reason what, you know. And so it's funny because in a way she acknowledges that the argument was made, and then. Well, I think that I would respond that my interpretation at least of the transcript there is that it's for that reason that she's sentencing to the low end of the guideline. She's simultaneously inserting and interrupting with the idea that she doesn't believe that these individuals are not responsible for their acts, which were some of the arguments made, especially as to Wallace, that he was intoxicated at the time and didn't know what he was getting into. She finds, and she repeatedly through the transcript finds, you guys, you knew what you were getting into. There were discussions. They not only kind of handled at least two of the pellets, the guns, but they talked about torturing the store owner with a curling iron. They talked about if they needed to that they would shoot the police with these firearms. So she's, I think, there responding to these arguments of, you know, I can't say that this was just created by the police. You got yourselves involved in this and went along with this and made statements that were pretty egregious as the government had argued in sentencing. But one part of what the district court said tells us that the district court understood that it could use the created by the police argument to go below the guidelines rather than just sentence at the lower end of the guidelines. I mean, I think that it's the recognition that she understood that it was created by the police and that nonetheless she thinks the sentence at the low end of the guidelines is appropriate. She gave no indications there that she believed that this was, given their willingness and participation, a set of offenses that warranted a variance. I think that that's the argument that we have based on this record to the extent, you know, that this court disagrees that this was not an adequate discussion. I agree that a remand is what would be the next step. I just don't think that that's required given what occurred here. If there's no additional questions, we just ask that the judgments of the district court be affirmed. Thank you. Mr. Becker, if you'd like some rebuttal, we'll give you two minutes. Thank you, Judge Hilliard. Let me start with that last point. The judge acknowledged that the guns were in this clearly because of the police and every time she was pressed on the fact that the defendants really didn't bring the guns, they didn't intend the guns to be there. She reverted to, but this was, they all intended violence, and violence is an element of a Hobbs Act offense regardless of whether there's a gun there. Violence is part of a Hobbs Act offense, so the fact that there was violence intended doesn't get to the issue of the gun bump. It only gets to this was a Hobbs Act offense. To come back to the government's- But doesn't that cut both ways? Because the question is, was the argument made to her adequately so that she would know, or are we in clear airline? Was the argument really presented to her such that she should have known that that was what you're asking for? I think the argument was made, although they did not say, except for perhaps Mr. Zucker in Hopkins' sentencing, did not say sentence entrapment or sentence factor manipulation, and even if it- So where was it made if they didn't say those things? Well, I think they all argued that in their arguments about the fact that the defendants didn't bring the guns to this event, they all said these sentences shouldn't be enhanced because the guns were brought by the police. But remember, Bigley found that it was plain error- Did you have to look for your best case on that? I think we, at least in the reply brief, we did focus on that, Judge Pillard. I don't have the cites before me. But remember, Bigley was decided, says that it was plain error for the judge to fail to consider it. But I'd like to get to the point of the government starts with 2X1.1C, and it reads expressly in that statute, in that rule, as meaning explicitly. This court, in a case called U.S. v. Robinson in 1996, interpreted expressly in another way. It said clearly, okay, that in the guidelines, when it says expressly, it also means clearly. And the statutory reference in 2B.1.3 is to 1951 and to 2113. If you look at the Hobbs Act and you look at the bank robbery statute, 2113, the Hobbs Act clearly defines conspiracy as within that offense. The bank robbery statute doesn't deal with conspiracy. It relies on 371, the general conspiracy statute, to which 2X1.1 very clearly applies. So the guideline does explicitly refer to the Hobbs Act in the statutory reference, and the government asks you to ignore that. On the issue of whether the ‑‑ I'm sorry. I think, Mr. Becker, that your time has expired. Okay. Thank you. So I did want to recognize that Ms. Hernandez, did you also want to rebuttal? If the court, just to respond to some of the questions. Can I give you one minute? Yes. Your Honor, on the expressly covers, 2X1.1 says expressly, if the guideline, unless the guideline expressly covers conspiracy, the government says, well, that means it has to be in the caption of the guideline. But the statutory index for a Hobbs Act robbery expressly sends you to 2B3.1. So I would argue to the court that that is expressly covers under the guideline. Thank you. And then with respect to ‑‑ you had asked ‑‑ Thank you, Ms. Hernandez. Can I give you a cite from the appendix, the supplemental appendix from pages 190 to 195, is the argument over when the conspiracy was forged. And at one point the judge says to me, move on, I've heard. So that whole argument is clearly discussed. On the low end finding, district court judges always give low end unless there's some aggravator. If the robbery had actually been, if the conspiracy had actually been completely forged by these defendants and actually carried out, the guideline range would have been, and they had actually walked into the store to make a robbery, the guideline range would have been exactly as it was here. So there was no mitigate, there was no, the mitigators in this case were not taken into account. Thank you. Thank you. And I do want to recognize that both Mr. Becker and Ms. Hernandez are court appointed counsel and we're very grateful to you for your able service this morning and especially Ms. Hernandez did not know until she arrived this morning whether she would in fact be called upon to argue. Thank you very much.
judges: Pillard, Wilkins, Edwards